**STATE WIDE PHOTOCOPY, CORP., Plaintiff,**

v.

**TOKAI FINANCIAL SERVICES, INC., Atlantic Business Products, Inc., and Robert Cohen, Defendants.**

No. 94 Civ. 8460 (SAS).

United States District Court, S.D. New York.

Aug. 3, 1995.

Leonard P. Lesser, Schneck, Weltman, Hashmall & Mischel L.L.P., New York City, for Plaintiff, State Wide Photocopy Corp.

Joseph P. Cyr, John Linsenmeyer, Timothy Burke, Morgan, Lewis & Bockius, New York City, for Defendant Tokai Financial Services, Inc.

Daniel Gildin, William F. Cuozzi, Kaufmann, Feiner, Yamin, Gildin & Robbins, New York City, for Defendants Atlantic Business Products, Inc. and Robert Cohen.

### MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff State Wide Photocopy, Corp. ("State Wide") commenced this action against Tokai Financial Services, Inc. ("Tokai"), Atlantic Business Products, Inc. ("Atlantic") and an Atlantic employee, Robert Cohen ("Cohen"), on November 21, 1994. State Wide filed an amended complaint ("the complaint") on January 18, 1995, alleging violations of (i) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* against all defendants and (ii) the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2701 *et seq.* against Tokai and (iii) several pendent state law causes of action. Defendants now seek, pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), to dismiss the federal claims against them, thereby depriving this Court of pendent jurisdiction to hear the remaining claims.[1]

---

1. For purposes of this motion, and in the interest of judicial economy, the factual allegations contained within plaintiff's RICO Statement, filed on February 9, 1995, are deemed to be incorporated into the complaint. To disregard these allegations would only cause delay by obliging plaintiff to seek leave to file an amended pleading asserting those very allegations.

## I. FACTS

Deeming the factual allegations contained in the complaint to be true, as the Court must, *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994), the relevant facts are as follows.[2]

Plaintiff is in the business of selling and leasing office equipment and is a competitor of Atlantic. Complaint at ¶¶ 9, 18. When State Wide customers choose to lease equipment, State Wide frequently submits financing applications to companies providing lease financing such as Tokai. *Id.* at ¶¶ 10–12. Since 1990, when a customer chose to lease from State Wide, an employee faxed Tokai a lease application on behalf of the customer, listing name, address, telephone number, indicators of creditworthiness, the equipment to be leased and its price. *Id.* at ¶¶ 13, 15. As the information contained in the application is confidential, Tokai agreed that its only use of the confidential information would be to evaluate the creditworthiness of State Wide's customers. *Id.* at ¶¶ 14–16.

In or about February, 1994, State Wide discovered that "individuals" at Tokai were appropriating confidential information in the financing applications and were providing that information to Atlantic. *Id.* at ¶ 17. State Wide alleges upon information and belief that "certain officers and/or directors at Tokai" authorized these acts. *Id.* State Wide discovered the diversion of information when it submitted a lease application for a customer who was subsequently contacted by Atlantic, quoted information from the lease application and offered a lower price than that offered by State Wide. *Id.* at ¶ 19.

In an attempt to end Tokai's actions, State Wide contacted Tokai's regional representative, but Tokai's representatives dismissed the allegations without investigation, and upon information and belief, permitted the scheme to continue. *Id.* at ¶¶ 20–21. State Wide began monitoring lease applications closely, and it learned that the next two customers that submitted applications to Tokai were contacted by Atlantic within forty-eight hours. *Id.* at ¶¶ 22–23.

On July 1, 1994, State Wide sent a letter to the Chief Executive Officer of Tokai, detailing the scheme and offering Tokai the opportunity to conduct an internal investigation. *Id.* at ¶ 24. Tokai "purportedly investigated" State Wide's allegations from July through October, 1994. *Id.* at ¶ 25.

On or about Friday, October 7, 1994, a test application for State Wide customer Trinity Managers International was submitted to Tokai, and Tokai's General Counsel and selected executives were given a copy of that application to monitor the information as it entered Tokai's information system. *Id.* at ¶ 26. On approximately October 12, 1994, Trinity Managers International was contacted by Mr. Cohen of Atlantic, who quoted information appearing on the application submitted by State Wide and offered to undercut State Wide's price. *Id.* at ¶ 27. Upon information and belief, several unnamed individuals at Tokai received a share of increased revenues from Atlantic in exchange for their participation in the scheme. RICO Statement at ¶ 9.

State Wide alleges, upon information and belief, that, due to the scheme, it lost at least four large contracts as well as goodwill with at least four other customers. Complaint at ¶ 28; RICO Statement at ¶¶ 4(c), 17. Further, State Wide alleged that the actual number of customers contacted by Atlantic, and how much revenue and goodwill was lost during the four years is unknown; it approximates that lost revenue and goodwill stands in excess of $10,000,000. Complaint at ¶ 28.

## II. DISCUSSION

 In addition to accepting the factual allegations of the complaint as true on a motion to dismiss, the Court must draw all inferences in favor of the pleader. *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The action cannot be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

**2.** The principle is the same where the motion is based on Rule 9(b) as well as Rule 12(b)(6). *See*

*Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986).

support of [the] claim which would entitle [plaintiff] to relief." *Cohen,* 25 F.3d at 1172 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

## A. *The RICO Claim*

■ To state a civil RICO claim under 18 U.S.C. § 1962, plaintiff must allege injury resulting from "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *see also Azrielli v. Cohen Law Offices,* 21 F.3d 512 (2d Cir.1994).

### 1. *The Pattern Element*

■ The requirement that RICO allegations constitute a pattern mandates that the complaint set forth at least two predicate acts within a period of ten years. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989) (*"H.J. Inc. "*). Further, as clarified below, there must be "relationship and continuity" between the predicate acts. *Id.* at 239, 109 S.Ct. at 2902.

### a. *Relatedness*

■ The Supreme Court, in *H.J. Inc.,* described relationship between predicate acts as "hav[ing] the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901. The Second Circuit has expanded on the principle:

> [a]n interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions. The degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology.

*Azrielli,* 21 F.3d at 520 (quoting *U.S. v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir. 1989)). Defendants do not offer a pointed argument that plaintiff failed to fulfill the relatedness requirement. Indeed, such an argument would almost certainly fail. The "relatedness" element is supported by allegations that several acts were committed close in time (during the early 1990's, especially during several months in 1994), proceeded under virtually identical methods (diversion of information over the wires) and sought common goals (to lure clients of State Wide). *See e.g., Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989).

### b. *Continuity*

*H.J. Inc.* also provided guidance on continuity, noting that it may exist in the form of "a closed period of repeated conduct, or [ ] past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902. Continuity's broad definition lends RICO plaintiffs several approaches for establishing it.

> [Continuity] may be proved in a variety of ways. For example, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." Alternatively, the continuity requirement may be met by demonstrating a threat of continuity, for example, by showing that … the predicates are a "regular way of conducting defendant's ongoing legitimate business."

*Azrielli,* 21 F.3d at 521 (quoting *H.J. Inc.,* 492 U.S. at 242–243, 109 S.Ct. at 2902).

Plaintiff argues that the alleged RICO acts constitute a closed ended scheme. Plaintiff's Brief in Opposition ("Op.Br.") at p. 23. Plaintiff alleged that defendants committed, over the course of approximately four to five years, specific RICO predicate acts. As noted above, these alleged acts were clearly related. Further, they involved systematic and repeated attempts to induce State Wide into transmitting client information and continuous conversion of the information to State Wide's rival. Clearly, these acts were not sporadic. *Compare e.g., Barsam v. Pure Tech Intern., Inc.,* 864 F.Supp. 1440, 1450 (S.D.N.Y.1994) (discussing dismissed RICO cases "based upon a single fraudulent end with a limited goal, lasting over a limited period of time"). While, generally, plaintiff

was the only victim of the alleged scheme, defendants' repeated, related and continuous acts during the course of four years formed a RICO pattern. *See Jacobson*, 882 F.2d at 720.

### 2. *The Racketeering Activity*

#### a. *The Wire Fraud Predicate Act*

Federal law renders it unlawful to use the interstate wires in furtherance of a scheme to defraud. 18 U.S.C. § 1343. This substantive crime is specifically listed as a RICO predicate act. 18 U.S.C. § 1961(1)(A).

##### i. *Rule 9(b) Particularity*

■ Because State Wide's RICO claim is based upon predicate acts of wire fraud, these allegations must comply with Fed. R.Civ.P. 9(b). *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Fed. R.Civ.P. 9(b) provides:

> In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

To meet the particularity requirement, the *circumstances* of fraud must be specifically alleged, including the content, date and place of the alleged representation, and the identity of the speaker or writer. *Cohen*, 25 F.3d at 1173 (emphasis added).[3] State Wide alleged that it was induced by (certain unnamed agents of) Tokai to transmit, by interstate wire—specifically, facsimile ("fax")—lease applications from New York to Pennsylvania and that Tokai concealed the fact that it subsequently disclosed this information to Atlantic. RICO Statement at ¶¶ 5(a). Plaintiff claimed several occasions on which it was induced to submit specific client lease applications to Tokai, the content of which, upon information and belief, was subsequently transmitted (and received) by fax to Cohen and Atlantic. *Id.* at ¶ 5(b); Complaint at ¶ 41. In addition to these alleged facts State Wide specifically alleged:

> Since in or about 1990, and specifically on each and every occasion Tokai caused to be transmitted and accepted a State Wide lease application through interstate wire transmission ... [and] fraudulently concealed from State Wide that they would convert the trade secrets and proprietary information contained in each such lease application in breach of their duty of good faith and in breach of the customs and standards in the business leasing industry, and used such trade secrets and proprietary information for their own pecuniary gain.
>
> ... [Despite State Wide's reliance on Tokai's assurances to the contrary] Tokai engaged in wire fraud ... when it fraudulently represented the "sophistication" of its credit-analysis procedure and wrongfully induced State Wide to electronically transmit credit applications for its customers, wherein confidential and proprietary information ... was wrongfully obtained, diverted and converted. This wrongful conversion and diversion ... through the use of interstate wires occurred on a regular and virtually daily basis, and specifically on March 17, 1992, June 3, 1992, December 2, 1992, February 28, 1994, March 24, 1994, May 26, 1994, June 3, 1994, June 13, 1994 and October 6, 1994.

Complaint at ¶¶ 40–41; *see also* RICO Statement at ¶ 5(c).

■ State Wide, therefore, was able to particularize all the requirements detailed above with the exception of a complete list of individuals allegedly involved other than Atlantic's employee, Cohen.[4] The Court declines to dismiss the complaint for plaintiff's failure (or inability) to name each participant in the alleged scheme. *See DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247–1249 (2d Cir.1987). While

---

**3.** This Court has also held that plaintiff must particularize, in addition to content, the actual items that were "obtained or given up." *See e.g., Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 284 (S.D.N.Y.1991). In the case presently before the Court, the items in question were specified as lease applications.

**4.** State Wide does list, without attributing specific acts to, six individuals associated with or employed by Tokai. *Id.* at 13.

information and belief pleading will generally not be sufficient to allege fraud, certain circumstances permit an exception:

> [A]llegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge.

*Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990); *DiVittorio, supra.* In this case, certain information is, understandably, beyond the pre-discovery knowledge of plaintiff. Relaxing the burden on plaintiff does not, however, relieve plaintiff of the requirement of demonstrating a strong inference of fraud.

> This exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.

*Wexner,* 902 F.2d at 172.

■ The Second Circuit has held that plaintiffs alleging fraud must provide a minimal factual basis to support a strong inference of fraudulent intent. *See Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995); *Wexner,* 902 F.2d at 172. A strong inference can be established by identifying a motive and an opportunity for committing fraud. *Powers,* 57 F.3d at 184; *Turkish v. Kasenetz,* 27 F.3d 23, 28 (2d Cir. 1994). Alternatively, the inference may be established by identifying circumstances showing conscious behavior by defendants. *Powers,* 57 F.3d at 184; *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989).

There is no doubt that State Wide has pleaded fraudulent intent on the part of defendants Atlantic and Cohen. As discussed above, both of these defendants had an opportunity to obtain valuable information through wire communications with Tokai and a financial motive for obtaining it.

The case of Tokai is not as clear. While opportunity is adequately alleged in the Complaint with respect to all defendants,

Tokai's motive is a closer question. Providing the alleged valuable information to Atlantic does not, without more, establish a motive for Tokai. On first blush, it would appear that the scheme would diminish Tokai's total revenues. In addition to added administrative burdens, Atlantic's price-cutting would lower the amount of money that customers would seek to finance from Tokai. Further, absent from the Complaint and RICO Statement is an allegation that Tokai, itself, or those who control it received kickbacks or a percentage of revenues from Atlantic.

■ However, plaintiff's allegation, upon information and belief, that several unnamed individuals at Tokai received kickbacks from Atlantic may provide a motive for Tokai to engage in wire fraud. *See* RICO Statement at ¶ 9. The allegation is further bolstered by plaintiff's claim that "certain officers and/or directors at Tokai" authorized these acts. *See* Complaint at ¶ 17.

Whether an employer is liable for alleged RICO violations by employees has not been definitively resolved in this Circuit.[5] This question has repeatedly divided the Circuits as well as the District Courts within this Circuit. *See e.g., Laro, Inc. v. Chase Manhattan Bank (Nat. Ass'n),* 866 F.Supp. 132 (S.D.N.Y.1994) (bank could not be liable under respondeat superior or vicarious liability for acts of loan officers), *aff'd without op.,* 1995 WL 409232, 1995 U.S.Dist. LEXIS 20297 (2d Cir. June 8, 1995); *Nu–Life Const. v. Board of Educ.,* 779 F.Supp. 248, 250–251 (E.D.N.Y.1991) (no liability assessed to municipality for criminal intent of municipal agents under respondeat superior); *Metro Furniture Rental, Inc. v. Alessi,* 770 F.Supp. 198, 201–202 (S.D.N.Y.1991) (bank not liable for acts of employees under respondeat superior or agency theory); *accord D & S Auto Parts, Inc. v. Schwartz,* 838 F.2d 964, 967 (7th Cir.) ("vicarious liability would defeat the purposes of RICO"), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988); *Schofield v. First Commodity Corp.,* 793 F.2d 28, 32 (1st Cir.1986) ("we think the concept of vicarious liability is directly at

---

**5.** Employer liability is generally premised upon one of two theories: (i) agency liability where the agent acts on authority of the principal; (ii) respondeat superior, which is based solely on the position of the employee. *See* Restatement (Second) of Agency §§ 219, 257, 261 (1957).

odds with [Congressional intent] behind section 1962(c)"); *but see e.g., Center Cadillac v. Bank Leumi Trust Co.,* 808 F.Supp. 213, 236 (S.D.N.Y.1992) (respondeat superior liability applied where bank benefitted from employees' scheme); *U.S. v. Private Sanitation Industry Ass'n,* 793 F.Supp. 1114 (E.D.N.Y. 1992) (in RICO prosecution, respondeat superior applied to corporation); *cf. U.S. v. Paccione,* 949 F.2d 1183, 1200 (2d Cir.1991) (acts of *supervisory* employees or individuals with ownership interests may expose employer to liability); *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 99 (2d Cir.) (conviction of corporation for subscribing to false tax return sustained), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983).[6]

Vicarious liability may be appropriate in certain circumstances. As noted above, State Wide alleged that certain high level agents of Tokai authorized the RICO predicate acts. Plaintiff alleged that it contacted Tokai's regional representative, sent a letter to the Chief Executive Officer of Tokai detailing the scheme, and that Tokai "purportedly investigated" State Wide's allegations for several months. Complaint at ¶¶ 20, 24–25. Further, a test application for a State Wide customer was submitted to Tokai, and Tokai's General Counsel and certain executives were notified and expected to monitor the information in Tokai's information system; soon after, the customer received an under-priced offer from Cohen. *Id.* at ¶¶ 26–27. What exactly these individuals knew prior and subsequent to these alleged incidents and how they responded is unknown at this time. However, a strong inference of impropriety may be drawn from the allegations. Only discovery will reveal whether there is any evidence of Tokai's liability. For purposes of this motion, however, the Complaint and RICO Statement have alleged a cause of action against Tokai.

The Court of Appeals does not hesitate to sustain claims where intent has been minimally particularized. *See e.g., Cohen v. Koenig,* 25 F.3d 1168, 1174 (2d Cir.1994) (on facts alleged, motive sufficient to "paint far rosier financial picture than actually existed"); *compare Connecticut Nat. Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987) (intent element inadequately pled where true interests of defendant inconsistent with complaint's allegations of motive); *Center Cadillac,* 808 F.Supp. at 236 (citing cases).[7] Here, plaintiff pled sufficient facts, although by a slim margin, to support its claim of wire fraud against Tokai.[8]

### b. *Other Alleged Predicate Acts*

■ State Wide also alleged that violations of N.Y.P.L. § 190.65, New York's prohibition on schemes to defraud, provide a basis for RICO predicate acts.[9] However,

---

**6.** Following discovery, plaintiff must be able to identify the employees, officers or directors of Tokai who were involved in the alleged unlawful acts. Tokai's liability may well turn on the identity and role of such individuals.

**7.** Given the Court's finding above, a determination of fraudulent intent through "conscious behavior" need not be made. Nonetheless, State Wide alleged facts that could reasonably support a conscious behavior finding. *See e.g. Powers,* 57 F.3d at 185. In *Powers,* the factual allegations established malicious violation of an agreement shortly after the agreement was made. Such behavior indicated a desire to commit the violations even prior to the agreement. A comparison may be drawn in Tokai's case. As noted above, some alleged acts took place almost immediately after the business relationship began (in 1990), and at first Tokai's representatives dismissed the allegations without investigation. *See* Complaint at ¶¶ 17, 20, 21. *See also, In re AnnTaylor Stores Sec. Litig.,* 807 F.Supp. 990, 1006–1007

(S.D.N.Y.1992); *Heineman v. S & S Machinery Corp.,* 750 F.Supp. 1179 (E.D.N.Y.1990).

**8.** In addition, strong support for plaintiff's argument that mere concealment or nondisclosure of information may support a charge of mail fraud exists in this Circuit. *See e.g., U.S. v. Altman,* 48 F.3d 96, 102 (2d Cir.1995), *U.S. v. Weiss,* 752 F.2d 777, 783–784 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985); *U.S. v. Von Barta,* 635 F.2d 999, 1007 (2d Cir. 1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981), *U.S. v. Bronston,* 658 F.2d 920, 926 (2d Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,* 1994 WL 88129, 1994 U.S.Dist. LEXIS 2929, at \*25 (S.D.N.Y. March 15, 1994).

**9.** Plaintiff withdrew its original contention that 18 U.S.C. § 1030 (computer fraud) and the ECPA (illegal electronic access and interception) constitute predicate acts. Op.Br. at p. 9.

§ 1961(1)(A) recognizes only the following state law violations as predicate acts:

> any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . which is chargeable under State law and punishable by imprisonment for more than one year.

The plain language of the statute does not include the conduct prohibited by N.Y.P.L. § 190.65. *See e.g. Private Sanitation Industry Ass'n*, 793 F.Supp. at 1130–1133 (noting essential element of extortion not required in New York coercion statute, N.Y. Penal Law § 135.65; since extortion expressly named and coercion excluded from statute, latter not recognized as RICO predicate act); *cf. U.S. v. Delano*, 55 F.3d 720, 727–728 (2d. Cir.1995) (government conceded N.Y.Penal Law § 165.15(10)—theft of services—not RICO predicate act). As § 1961(1)(A) does not expressly include generic fraud offenses, N.Y.P.L. § 190.65 is not a RICO predicate act.

### B. *RICO Conspiracy*

■ State Wide alleges that defendants engaged in a RICO conspiracy in violation of 18 U.S.C.1962(d). "[T]he core of a RICO civil conspiracy is an agreement to commit predicate acts . . ." *Hecht v. Commerce Clearing House Inc.*, 897 F.2d 21, 25 (2d Cir.1990). A RICO conspiracy "is properly measured [not under the requirements of Fed.R.Civ.P. 9(b), but rather] under the more liberal pleading requirements of Rule 8(a)." *Id.* at 26, n. 4. Further, to state a claim for RICO conspiracy, plaintiff must plead that the parties to the agreement had knowledge that the acts were part of a RICO pattern of activity. *Id.* at 25 (citing *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989)). The cause of action also has been described as requiring that defendants understand the scope of the enterprise, and that they knowingly agreed to further the scheme through the predicate acts. *Id.* at 25–26 (citing *Mo-*

*rin v. Trupin*, 711 F.Supp. 97, 111 (S.D.N.Y. 1989)).

Unquestionably, the very nature of State Wide's claims allege a fraudulent scheme between Tokai and Atlantic. *See* Complaint at ¶ 45; RICO Statement at ¶ 14. In fact, the gravamen of the Complaint is based on an agreement between Tokai and Atlantic. State Wide named possible conspirators at Tokai and a specific conspirator at Atlantic, (*i.e.*, Cohen). Because the substantive RICO cause of action is adequately pled, and because State Wide adequately alleged a knowing agreement, the motion to dismiss the conspiracy claim is denied.

### C. *The ECPA Claim*

■ State Wide's second federal cause of action, alleged against Tokai only, is based on the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ("ECPA"). The primary purpose of §§ 2701 *et seq.* is to prohibit illegal access to, disclosure and interception of,[10] electronic information. *See Organizacion JD Ltda. v. U.S. Dept. of Justice*, 18 F.3d 91, 94 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2679, 129 L.Ed.2d 813 (1994); *Manufacturas Intern. v. Mfrs. Hanover Trust Co.*, 792 F.Supp. 180, 190–191 (E.D.N.Y.1992).

Plaintiff alleges Tokai violated § 2701 and § 2702 of the ECPA. Where a party has been injured as a result of violations of § 2701 or § 2702, the statute provides a civil cause of action:

> . . . any provider of electronic communication service, subscriber, or customer aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2707.

### 1. *§ 2701—Unlawful Access to Stored Communications*

18 U.S.C. § 2701(a) provides that:

---

**10.** The word intercept is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the

use of any electronic, mechanical, or other device." 18 U.S.C. 2510(4).

[e]xcept as provided in subsection (c) of this section whoever—

 (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

 (2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished . . .

Plaintiff claims, upon information and belief, that on the same occasions the alleged RICO violations were committed,

 . . . Tokai intentionally exceeded State Wide's authorization to use the proprietary information contained in the lease applications electronically submitted to Tokai by State Wide, which information was stored by Tokai and/or Tokai Bank on its computer facilities, and obtained and provided such proprietary information to Atlantic in violation of 18 U.S.C. § 2701.

Complaint at ¶ 55.

The Complaint strains to place the parties within the statutory framework of the ECPA. State Wide plainly does not allege that it is a provider or subscriber within the meaning of § 2707. Similarly, State Wide has failed to allege that it is even a customer within the meaning of that section.

The *ad hoc* contention that Tokai is "a facility through which an electronic communication service is provided" is rendered suspect by a fair reading of the Complaint.[11] Plaintiff alleges that Tokai provides a communication service to the public, but a forthright consideration of the facts establish that Tokai is in the business of financing and that it merely uses fax machines and computers as necessary tools of almost any business today.

Even if the Court were to piece together the Complaint's allegations and assume Tokai

is a § 2701 "facility through which an electronic communication service is provided," plaintiff's statutory interpretation and conclusions are misguided. Plaintiff claims Tokai exceeded its authorization to access the facility, but it also suggests that the facility is Tokai, itself. As noted above, § 2701 is aimed at parties accessing facilities without authorization. For State Wide's claim to stand, it would require the Court to assume that, paradoxically, Tokai is the facility at issue, yet that facility has limited access to itself.[12] *Cf. Riden v. ICI Americas, Inc.*, 763 F.Supp. 1473, 1495 (D.Minn.1991) (where access to information authorized, ECPA claim failed). Furthermore, State Wide also failed to allege facts satisfying the requirement that the entity in violation of § 2701 "*obtains, alters* or *prevents* authorized access to a wire or electronic communication while . . . in storage . . .*"

The Senate Report typifies three electronic communication services: a telephone company, an electronic mail company, and a company providing remote computing services. *See* S.Rep. No. 541, 99th Cong., 2d Sess. 8 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3568. § 2711(2) defines "remote computing service" as the "provision to the public of computer storage or processing services by means of an electronic communications system." None of these descriptions apply to Tokai.

More generally, it appears that the ECPA was primarily designed to provide a cause of action against computer hackers, (i.e., electronic trespassers). There are no allegations that Tokai is a hacker. In short, plaintiff does not adequately plead that Tokai has violated § 2701.

### 1. *§ 2702—Disclosure of Electronic Communications*

§ 2702(a), in relevant part, prohibits "provider[s of] an electronic communication service to the public" or "remote computing service to the public" from "knowingly di-

---

**11.** Op.Br. at p. 28–30.

**12.** Tokai argues that it authorized access to the information provided by State Wide, thereby triggering subsection (c) of § 2701, which makes the prohibitions of subsection 2701(a) inapplicable "with respect to conduct authorized by the . . . entity providing a wire or electronic communications service." Reply Brief at pp. 7–8.

vulg[ing] … the contents of [ ] communication[s]" stored by, carried or maintained on that service.

Plaintiff alleged, upon information and belief, that

Tokai intentionally and knowingly divulged to Atlantic the contents of the lease applications submitted by State Wide to Tokai through electronic communications and electronically stored by Tokai in violation of 18 U.S.C. § 2702.

Complaint at ¶ 55.

As with its § 2701 claim, plaintiff fails to allege facts that satisfy the applicable statutory definitions and elements. State Wide's § 2702 claim is deficient in the same fashion as the § 2701 claim in failing to allege facts demonstrating that Tokai is covered by the described categories of prohibited actors or that State Wide is an aggrieved party within the meaning of the ECPA. Finally, plaintiff has failed to persuade the Court that § 2702 was designed to protect against the mundane conduct alleged in almost any wire fraud case—namely use of the wires (via phone, fax, modem, computer) to perpetrate a scheme to defraud.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the RICO claims are denied. Tokai's motion to dismiss the ECPA claims are granted without leave to replead.[13] A pretrial conference will be held on August 17, 1995 at 10:30 a.m.

SO ORDERED.

---

13. This Order does not reach the adequacy of the pendent claims, the substance of which is not before the Court. As a federal cause of action remains, the Court retains jurisdiction over the state claims.