**SHERMAN & COMPANY,**
Plaintiff/Counter–
Defendant,

v.

**SALTON MAXIM HOUSEWARES, INC.,** Defendant/Counter–
Plaintiff.

No. 99–CV–70548.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 31, 2000.

**818**

Irwin M. Alterman, Kemp, Klein, Troy, MI, for plaintiff.

Morley Witus, Barris, Sott, Detroit, MI, for defendant.

*ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT/COUNTER-PLAINTIFF'S MOTION TO AMEND COUNTERCLAIM*

PEPE, United States Magistrate Judge.

Plaintiff/counter-defendant Sherman and Company ("Sherman")[1] filed a complaint on February 9, 1999, under this Court's diversity jurisdiction, asserting several breaches of a sales representative contract and seeking damages for unpaid commissions. Defendant/counter-plaintiff Salton Maxim Housewares, Inc. ("Salton") filed its answer and affirmative defenses on April 15, 1999, and also filed a counterclaim seeking declaratory relief that the contract was cancelled. Sherman filed its affirmative defenses to the counterclaim on

May 3, 1999, and amended its complaint, answer, and affirmative defenses on July 2, 1999. Salton subsequently filed an answer and affirmative defenses to the amended complaint on August 24, 1999.

On November 9, 1999, Salton moved to amend its counterclaim to include a federal claim under the Electronic Communications Privacy Act ("ECPA") and a Michigan state law claim of misappropriation of trade secrets. Sherman filed its response on December 27, 1999, and Salton replied on January 7, 2000. This matter was referred to the undersigned in December 1999 for hearing and determination under 28 U.S.C. § 636(b)(1)(A). The undersigned held a hearing on Salton's motion on January 21, 2000, and a supplement to the proposed amended counterclaim was thereafter submitted.[2] Because Salton fails to state a claim upon which relief can be granted under the ECPA, its motion is granted solely to add a claim under Michigan law on misappropriation of trade secrets.

## I. BACKGROUND

In January 1997, defendant/counter-plaintiff Salton won a multi-year contract to sell kitchen and small household appliances under the mark of "White Westinghouse" to Kmart. Plaintiff/counter-defendant Sherman entered into a contract with Salton in May 1997, whereby Sherman would act as a manufacturer's representative to Kmart. Sherman was also a product representative to Kmart for other companies than Salton including Windmere. Salton alleges that Sherman's performance was deficient and that Sherman "alienated and antagonized" several Kmart buyers and contacts. In June 1998 Sherman stopped working for Salton, allegedly at Kmart's request and Salton's insistence. Sherman continued to act as a manufactur-

---

1. Plaintiff/counter defendant refers to "James Sherman" as the principal of plaintiff company. This usage is retained in this order.

2. At the Court's request, Salton's counsel filed a Supplemental Statement to Clarify Proposed Amended Counterclaim. The statement contained facts which the undersigned shall consider incorporated in the proposed amended counterclaim for purposes of this motion.

ing representative for Windmere for other electric products.

In its original counterclaim for relief, defendant/counter-plaintiff Salton asserted that Sherman materially breached its contract and sought a declaratory judgment "that the contract between Sherman and Salton is canceled and Salton is relieved of any obligations or liabilities under the contract." There was no demand for money damages or injunctive relief. Salton now seeks to add claims that Sherman (1) intentionally accessed unauthorized information in violation of the ECPA, 18 U.S.C. § 2701 et seq., and (2) misappropriated a trade secret in violation of M.C.L. § 445.1902(b)(ii)(A). In the proposed amended counterclaim it seeks declaratory relief and "actual, statutory, and punitive damages and reasonable attorney fees and other litigation costs, and any profits made by Sherman as a result of the violation."

Salton alleges that after James Sherman no longer worked for it, he used a computer access code that Kmart provided him when he worked for Salton to gain access to certain Salton sales data in the Kmart computer system and thereafter provided that information to Windmere. Salton claims that it had instructed Kmart to cut off Sherman's access to Salton's data, but apparently that denial of access was not done until later. Thus, Salton's data was available to James Sherman using the computer access code Kmart provided him. Salton alleges that even though "Sherman did have authorization to log on to the Kmart computer system to access information about various venders and their products that he was representing" and that "in fact Kmart continued to provide [James Sherman] access to Salton information in addition to information about his other vendors," that "Salton certainly did not authorize him to view this information, and he knew he was not so authorized." Supplemental Statement at 1–2. While James Sherman disputes this and believed he had access and authorization,[3] for purposes of this motion, which is reviewed under a similar standard as a Fed.R.Civ.P. 12(b)(6) motion, Salton's allegations are accepted as true. Salton contends that this actual access that Sherman had and used was "unauthorized" under the ECPA.

Salton argues in its motion to amend that (1) there has been no undue delay, bad faith, or dilatory motive because it learned of the alleged unauthorized access and misappropriation shortly before the October 20, 1999, deposition and promptly filed its motion to amend on November 9, 1999, after verifying the information at the deposition; and (2) there would be no prejudice to Sherman because the discovery cut-off date has been extended to March 1, 2000.

Plaintiff/counter-defendant Sherman rejoins in its brief in opposition that amendment would be futile and unduly prejudicial. Sherman maintains that the Kmart network system allows access to information on all vendors and does not require a separate access code for each specific vendor. Sherman asserts that the counterclaim does not allege that Kmart revoked authorization before Sherman accessed the information and such access would not be a criminal violation of the anti-hacking statute, and therefore the amendment would be futile. The plaintiff/counter-defendant also argues that the data taken from the Kmart network about Salton was otherwise available to Windmere and had no independent economic value and thus does not constitute a "trade secret" under M.C.L. § 445.1902(d). In its reply brief, Salton responds to the various claims of futility and prejudice raised by Sherman.

## II. ANALYSIS

Under Fed.R.Civ.P. 15(a), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Other-

---

3. James Sherman stated during his deposition that he thought his access to the Salton data was authorized. Dep. T. at 164–65.

wise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated that:

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim of the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

As the Supreme Court noted, however, leave to amend may be denied if the proposed amendment is futile. *Id.* A number of courts have subsequently held that an amendment need not be permitted if it is frivolous or would be subject to dismissal.[4]

**A. Salton's ECPA Claim**

■ The general purpose of the ECPA was to create a cause of action against "computer hackers (e.g., electronic trespassers)." *State Wide Photocopy Corp. v. Tokai Financial Services, Inc.,* 909 F.Supp. 137, 145 (S.D.N.Y.1995). The provisions of section 2701 of the Act apply to persons or entities in general and prohibit intentional accessing of electronic data without authorization or in excess of authorization. Section 2702 prohibits disclosure

of electronic data, but this prohibition is limited to persons or entities that (1) provide an electronic communication service to the public; or (2) provide remote computing service to the public. In this case there is no indication that Sherman falls under either of the two limited categories of covered persons or entities of section 2702. Thus, if Salton has a viable claim against Sherman under the ECPA, it will have to fall under section 2701 of that Act.[5]

■ Salton alleges in Count II of its proposed amended complaint that Sherman obtained Salton sales information and disclosed it to a competitor, Windmere. Yet, unlike section 2702, section 2701(a) of the ECPA does not prohibit the *disclosure* or *use* of information gained without authorization. *Wesley College v. Pitts,* 974 F.Supp. 375, 389 (D.Del.1997) (finding that the ECPA "does not censure the disclosure or use of the contents of those stored communications unless the disclosing party or using party is the provider of an electronic communication service" as defined in section 2702). Rather, section 2701(a) prohibits the intentional unauthorized *access* of an electronic communication service and the subsequent obtainment, alteration or prevention of authorized access to the service. Because the language of section 2701(a) specifically refers to "access" and not disclosure or use, "a person who does not provide an electronic communication service ... can disclose or use with impunity the contents of an electronic communication unlawfully obtained from electronic storage." *Id.* While at least one district court has found this gap troubling, it is the

---

**4.** *See, e.g., Glick v. Koenig,* 766 F.2d 265 (7th Cir.1985); *Massarsky v. General Motors Corp.,* 706 F.2d 111 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation,* 632 F.2d 21 (6th Cir.1980).

**5.** Section 2701(a) provides that:

[e]xcept as provided in subsection (c) of this section whoever—
> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
> (2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

role of Congress to address this deficiency and not the courts. *Id.*

■ The ECPA's prohibition on intentional exceeding of authorized access anticipates that a person with authorization to a computer database or certain public portions of a database is not thereby authorized to visit "private" zones of data in the system. *See* Raphael Winick, *Searches and Seizures of Computers and Computer Data*, 8 HARV.J.L. & TECH. 75, 98 (1994). Yet, for "intentional" access in excess of authorization to be a crime and actionable civilly, the offender must have obtained the access to private files without authorization (e.g., using a computer he was not to use, or obtaining and using someone else's password or code without authorization). At a minimum, there must be a clearer and more explicit restriction on the authorized access than presented by Salton's proposed counterclaim. Here Sherman's access to the Salton data in the Kmart network system was in no way restricted by technical means or by any express limitation. Because section 2701 of the ECPA prohibits only unauthorized access and not the misappropriation or disclosure of information, there is no violation of section 2701 for a person with authorized access to the database no matter how malicious or larcenous his intended use of that access. Section 2701 outlaws illegal entry, not larceny.

■ Salton asserts that James Sherman accessed certain of its sales information located in the Kmart network after his dismissal. The question is whether Salton has alleged and proffered sufficient proofs to create a colorable claim that such access was "unauthorized." Where a party consents to another's access to its computer network, it cannot claim that such access

was unauthorized. *See American Computer v. Jack Farrell Implement*, 763 F.Supp. 1473, 1495 (D.Minn.1991). Salton admits that Kmart provided Sherman with authorization to log on to the computer network to access information about vendors and products that Sherman was representing. Further, Kmart continued to provide James Sherman access to Salton's information after his dismissal by Salton. Salton has not pled nor offered to show that Kmart instructed Sherman that he no longer had authorization to access Salton's sales information. Nor has Salton pled or offered to show that there was an agreement between the parties that limited plaintiff's access on the Kmart network.

Because section 2701 does not prohibit the disclosure or use of information obtained without authorization, and without a more specific allegation of facts that Sherman's access was "unauthorized" within the meaning of the ECPA,[6] the undersigned finds that Salton's proposed claim under the ECPA does not state a claim and the amendment to add it would thus be futile. Accordingly, Salton's motion to amend its counterclaim is denied as to this claim.

### B. *Salton's Claim of Misappropriation of Trade Secrets*

■ Salton also asserts a state law claim of misappropriation of trade secrets against Sherman. Unlike section 2701(a) of the ECPA, M.C.L. § 445.1902(b)(ii)(A) does prohibit the use of improperly acquired trade secrets.[7] Under that statute Salton would have to establish among other things: (1) whether the sales data amounted to "trade secrets"; and (2) whether Sherman had express or implied

---

**6.** Salton alleges in its supplemental statement that James Sherman "knew he was not ... authorized [to access the sales data]." While he stated in his deposition that he believed disclosing confidential information was wrong, Dep. T. at 177, James Sherman testified elsewhere that he believed he still had authorization to access Salton's sales data through the Kmart network after his termination, *Id.* at 164–65.

**7.** MCL § 445.1902(b)(ii)(A) defines "misappropriation" as the "[d]isclosure or use of a trade secret of another without express or implied consent by a person who ... [u]sed improper means to acquire knowledge of the trade secret."

consent to disclose or use the data. Sherman argues that Salton cannot prove the data qualifies as a trade secret. This involves issues of fact that are dependent upon the content of the retrieved data and the context of its availability elsewhere. Salton has alleged that Sherman took sales data constituting trade secrets and/or proprietary information under M.C.L. § 445.1902(b)(ii)(A) and gave it to Salton's competitor, Windmere, without Salton's consent. Because this Court must accept as true Salton's allegations for purposes of the motion to amend, Sherman has not established futility. Nor has there been a showing of sufficient prejudice to warrant denial of the motion. Therefore, Salton's motion to amend should be granted as to this state law claim. The issue of whether this data constitutes information protected by the Michigan statute can be better determined in a motion for summary judgment or at trial.

Accordingly,

IT IS ORDERED that the motion to amend the counterclaim by defendant/counterplaintiff Salton Maxim Housewares, Inc., is DENIED IN PART and GRANTED IN PART. Salton shall file an amended counterclaim with this Court consisting of the current Count I and the state law claim of misappropriation of trade secrets.

This motion was referred under 28 U.S.C. § 636(b)(1)(A) for hearing and determination. Because the denial of the motion to amend is in effect dispositive of the proposed federal claim, one might argue that this matter should be handled under 28 U.S.C. § 636(b)(1)(B). The determination in this order that the alleged conduct by Sherman does not violate the ECPA is purely a legal determination. Therefore, this legal issue may be reviewed *de novo* by an Article III judge if either party to this litigation files objections to this order under Fed.R.Civ.P. 72 and Local Rule 72.1(d) within 10 days of service. The parties are put on notice that failure to file specific objections within the specified time limit constitutes a waiver of any further right of appeal.

So ORDERED.